IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARCO A. AVALOS,<br><br>Defendant. | 8:18CR311<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on the Motion to Suppress and Request for Evidentiary Hearing and Oral Argument (Filing No. 15) filed by Defendant, Marco A. Avalos. Defendant filed a brief in support of the motion (Filing No. 16) and the government filed a brief in opposition (Filing No. 18).

The Court held an evidentiary hearing on the motion on February 14, 2019. Defendant was present with his attorney, David Stickman. The government was represented by Assistant United States Attorney, Thomas Kangior. Oscar Gabriel Garcia ("Supervisor Garcia"), a security supervisor with the Creighton University Department of Public Safety, and City of Omaha police officer Matthew McDonald ("Officer McDonald") testified on behalf of the government. The Court received into evidence Exhibits 1 and 2 offered by the government and Exhibit 101 offered by Defendant. A transcript (TR.) of the hearing was prepared and filed on February 28, 2019. (Filing No. 25). This matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that Defendant's motion be granted, in part, and in part denied.

## BACKGROUND

On October 25, 2018, Creighton University public safety officers responded to a call from a female student on campus who felt threatened by a man, later identified as Defendant, cat-calling her and attempting to enter her residence hall. (TR. 6-7). Supervisor Garcia testified that public safety officers sought to stop Defendant to ask for his identification and to ban and bar him from campus. (TR. 8-9). Public safety officers located Defendant based on the student's description. (TR. 7-8). The public safety officers attempted to detain Defendant; Defendant resisted, and after

a struggle, Defendant hit the ground and a concealed handgun fell from his person. (TR. 9-11). The public safety officers called 911, handcuffed Defendant, and waited for Omaha Police Department ("OPD") officers to arrive. (TR. 10-11). Creighton's security cameras recorded these events. See Exhibit 1.

OPD officers McDonald and Carrera arrived at the scene approximately five minutes later. Officer McDonald's body camera recorded OPD's encounter. See Exhibit 2. Officer McDonald testified that upon his arrival, a public safety officer turned over the firearm recovered from Defendant. (TR. 12, 26). Officer McDonald secured the firearm in his cruiser while Officer Carrera patted down Defendant, who was still in handcuffs. (TR. 27). Officer Carrera asked Defendant if he had "anything else" on him, to which Defendant reportedly responded, "I have dope." (Ex. 2, at 1:30-1:59). Officer Carrera searched Defendant's person and recovered drug paraphernalia and a brown powder substance. (*Id.* at 4:54-6:53; 14:01-16; TR. 30-32, 36). Officer Carrera asked Defendant what the brown substance was, and Defendant stated, "crystal." (Ex. 2, at 19:36; TR. 31-32). Defendant was not advised of his *Miranda* rights prior to making such statements. (TR. 28, 36).

Defendant is charged in the Indictment with one count of being a felon in possession of a firearm under 18 U.S.C. § 924(g)(1). (Filing No. 1). Defendant moves the Court for an order suppressing all evidence obtained from the seizure and search of his person, including his statements, arguing he was stopped and detained without reasonable suspicion and arrested without probable cause in violation of the Fourth Amendment. Defendant also seeks to suppress his statements made without being advised of his *Miranda* rights, in violation of the Fifth Amendment.

The government contends that Creighton public safety officers detained Defendant on private property and were not acting under the authority of any governmental agency, and therefore the Fourth Amendment is not implicated. The government further argues that Defendant's statements do not need to be suppressed as such statements were not the product of custodial interrogation and such questioning was permitted for purposes of officer safety.

## ANALYSIS

### I. Initial Detention

Defendant argues that Creighton University public safety officers did not have reasonable suspicion to stop and detain him for "catcalling" in violation of the Fourth Amendment. (Filing

No. 16 at p. 2). The government asserts that the Fourth Amendment's protections do not apply because the security officers who initially stopped and detained Defendant are private persons employed by a private institution. (Filing No. 18 at p. 3).

The Fourth Amendment only applies to state action; its protection against unreasonable searches and seizures "is wholly inapplicable to a search or seizure . . . effected by a private individual not acting as an agent of the Government." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Accordingly, "the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative but it does protect[ ] against such intrusions if the private party acted as an instrument or agent of the Government." *United States v. Highbull*, 894 F.3d 988, 991-92 (8th Cir. 2018), *reh'g denied* (Jan. 11, 2019)(quoting *Skinner v, Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989))(internal quotation marks omitted)(alteration in original). "Whether a private party should be deemed an agent or instrument of the government for Fourth Amendment purposes necessarily turns on the degree of the government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances." *Id.* (quoting *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010). When evaluating agency in the Fourth Amendment context, the court considers "[1] whether the government had knowledge of and acquiesced in the intrusive conduct; [2] whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and [3] whether the citizen acted at the government's request." *Id.* (citing *Wiest*, 596 F.3d at 910). "A defendant bears the burden of proving by a preponderance of the evidence that a private party acted as a government agent." *Id.* (internal citations and quotation marks omitted).

In this case, all three factors weigh in favor of a finding that agency did not exist between Creighton public safety officers and local law enforcement on October 25, 2018, such that the Fourth Amendment should apply to their seizure of Defendant. First, there is no evidence that any local law enforcement officers knew of or acquiesced in the actions of Creighton's public safety officers at the time of the initial contact with Defendant. Supervisor Garcia testified that public safety had no prior contact with, and received no instructions from, OPD upon receiving the call from the Creighton student. (TR. 11, 23). Officer McDonald similarly testified that OPD gave no directions to the public safety officers before his arrival. (TR. 12-13). Creighton public safety officers do not have any closed system communications with OPD, and instead Creighton's public safety dispatcher must call 911 for assistance from local law enforcement just like any other private

citizen. (TR. 20). Here, Creighton public safety called 911 only after the struggle with Defendant and the discovery of the handgun which had fallen from his clothing. (TR. 11).

The evidence also reflects that Creighton's public safety officers were acting to further the private university's own purposes and did not act at the government's request. Supervisor Garcia testified that public safety officers first approached Defendant to identify him to ban and bar him from Creighton's property. Creighton's public safety department provides services 24/7/365 as first responders, including first-aid, and foot and bicycle patrol. (TR. 21-22; Ex. 101). As a private institution, Creighton public safety officers are employees of Creighton University, and are responsible for the safety of its students, faculty, and visitors. Creighton's Department of Public Safety is a "private security force," although they do carry handcuffs and firearms with open-carry permits issued by the City of Omaha. However, public safety officers do not receive training or guidance from OPD nor any other law enforcement academy training. And while "[t]he department . . . maintains a close working relationship with municipal, state and federal law enforcement agencies," "there is no formal agreement or written memoranda of understanding between Creighton and governmental law enforcement agencies on the investigation of alleged criminal offenses." (Ex. 101 at p. 3, 11). Creighton will contact governmental law enforcement agencies for more serious crimes. (Ex. 101 at p. 11). There is no evidence in this case that the public safety officers acted at the government's request. See, e.g, *United States v. Gonzalez,* 781 F.3d 422, 427 (8th Cir. 2015)(finding Fourth Amendment was not implicated by search by a private company where there was "no evidence of a close and ongoing relationship" between the private company and law enforcement, where police did not direct the private company to search, and where the private company contacted law enforcement only after making the independent decision to search). In consideration of the totality of the circumstances, the undersigned magistrate judge finds that Creighton public safety officers were acting as private individuals, and not as government agents, when they seized Defendant on October 25, 2018.

Because the Defendant was initially seized by private individuals not acting as agents of the government, the undersigned magistrate judge concludes that the Fourth Amendment does not apply to such seizure. Creighton public safety officers recovered the handgun from Defendant's person as a result of such seizure and prior to making any contact with local law enforcement. Accordingly, the handgun recovered by Creighton public safety officers and voluntarily turned over to OPD officers does not need to be suppressed.

Both parties further address whether the narcotics found on Defendant's person by OPD officers and his statements about the narcotics should be suppressed. However, Defendant is charged in the Indictment with one count of being a felon in a possession of a firearm under 18 U.S.C. § 924(g)(1) and is not charged in this case with any drug crimes. See Filing No. 1. Therefore, it is unclear for what purpose the government would, or could, seek to introduce such evidence in this case. Nevertheless, the undersigned magistrate will address the merits of the parties' arguments.

**II. Warrantless Arrest and Search Incident to Arrest**

The government concedes that Defendant was in custody when OPD officers first made contact with Defendant but asserts there was probable cause to make a warrantless arrest. (Filing No. 18 at p. 5). "A warrantless arrest by law enforcement is reasonable where there is probable cause to believe that someone has committed or is committing a crime." *United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013)(citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "'To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *Id.* (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "Arresting officers are not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest." *Id.* (citing *United States v. Webster*, 625 F.3d 439, 442 (8th Cir. 2010). "Instead, the mere 'probability or substantial chance of criminal activity, rather than an actual showing of criminal activity,' is all that is required." *Id.* quoting (*United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005)). "Law enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Henderson*, 613 F.3d 1177, 1181 (8th Cir. 2010)(internal quotation marks and citation omitted).

By the time OPD officers arrived on the scene, they had been advised of the facts preceding the 911 call, including public safety officers' discovery of a concealed handgun. (Ex. 2, at 00:33). At a minimum, OPD officers had probable cause to arrest Defendant for carrying a concealed firearm. Nebraska state law provides that carrying a concealed weapon, including a handgun, is a crime, unless the individual is a valid permit holder under the Concealed Handgun Permit Act.

See Neb. Rev. Stat. § 28-1202. Because Defendant's arrest was supported by probable cause, Defendant was not unlawfully detained or arrested. And, because the search of Defendant's person was incident to his arrest, law enforcement's seizure of the drug paraphernalia and the brown powder substance was constitutionally permissible. See *United States v. Robinson*, 414 U.S. 218, 226 (1973)("If an officer has arrested the individual, the officer may search the individual's person incident to that arrest and may reach into his pockets.").

**III. Statements**

Defendant seeks to suppress any statements he made while in custody. The government concedes that Defendant was in custody but had not been given *Miranda* warnings at the time Officer Carrera inquired of Defendant as to whether he had "anything else" (besides the handgun) on him, to which Defendant replied "dope." (Filing No. 19 at p. 4). Evidence obtained by the police during custodial interrogations cannot be used in court during trial unless the defendant was first informed of the right not to incriminate herself and the right to a lawyer. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). However, it is reasonable for officers to inquire about weapons or other items that might present a safety risk. *Miranda* warnings are not required before asking questions necessary to protect the public or the police from immediate danger. *New York v. Quarles*, 467 U.S. 649, 655 (1984). Here, the officers knew Defendant had possessed a concealed firearm and had created a disturbance. Under these circumstances, Officer Carrera's question preceding his initial pat-down was asked to assess the existence of any danger rather than to seek incriminatory information. Therefore, the undersigned finds that Defendant's response about having "dope" was not obtained in violation of his Fifth Amendment rights.

However, the undersigned magistrate judge finds that Defendant's response that the brown substance was "crystal" should be suppressed as this statement was made in response to Officer Carrera's inquiry about what the substance was, a question likely to lead to an incriminatory response.[1] "Interrogation occurs when officers expressly question or use words or actions which police should know are reasonably likely to elicit an incriminating response from the suspect."

[1] Although Officer McDonald testified officers are always concerned about the dangerousness of recovered substances, and were hesitant to test the substance in this case, (TR. 32-33), there was no urgency in testing the substance as the officers had ways of protecting themselves without obtaining any response from Defendant. In fact, there was discussion between the OPD officers concerning the nature of the substance during which time it was handled with gloved hands and field tested. (Ex. 2 at 16:43-21:06).

*Holman v. Kemna*, 212 F.3d 413, 417 (8th Cir. 2000)(citing *Innis*, 446 U.S. at 301). At the time Officer Carrera asked Defendant what the substance was, Defendant was in custody and any public safety concerns were no longer present. Defendant had not been advised of his rights under *Miranda* and officers suspected the substance was some type of narcotic. Accordingly, Officer Carrera should have known the question was reasonably likely to elicit an incriminating response, and therefore, Defendant's statement that the substance was "crystal" must therefore be suppressed.[2]

Upon consideration,

**IT IS HEREBY RECOMMENDED** to Senior United States District Court Judge Laurie Smith Camp that Defendant's Motion to Suppress (Filing No. 15) be granted, in part and denied, in part as set forth above.

Dated this 1st day of April, 2019.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

**ADMONITION**

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

[2] The government initially stated that it does not intend to introduce this statement at trial since the chemical analysis will show what the substance actually was. (Filing No. 18 at p. 5). The government nevertheless argued at the hearing that the statement could be elicited under an officer safety exception. (TR. 42-43).